CHARLES H. MORTON AND CAROL C. MORTON, Petitioners, v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Morton v. Commissioner
Docket No. 10719-85.
United States Tax Court
T.C. Memo 1986-132; 1986 Tax Ct. Memo LEXIS 476; 51 T.C.M. (CCH) 783; T.C.M. (RIA) 86132; April 2, 1986. *476 Held: Husband's contribution to two house funds operated by fire station to which he was attached are not deductible under sec. 162. Raymond P. Fitzpatrick, Jr., for the petitioners. Helen C. T. Smith, for the respondent. WHITAKER
MEMORANDUM FINDINGS OF FACT AND OPINION WHITAKER, Judge: Respondent determined a deficiency in the Federal income tax liability of petitioners for the calendar year 1981 in the amount of $880.92. After concession *477 by petitioners, the sole issue for decision is whether petitioners are entitled to a deduction under section 162 [1] for their 1981 income tax year in the amount of $381, composed of house dues of $84 and shift dues of $297 paid by Charles H. Morton (Morton) as a member of the Fire and Rescue Service of the City of Birmingham, Alabama. For convenience our Findings of Fact and Opinion are combined. Some of the facts have been stipulated and they are so found. At the time the petition was filed, petitioners resided in Birmingham, Alabama. During all of the year 1981, and for a number of years prior to that time, Morton had been a member of the Fire and Rescue Service (formerly Fire Department) of the City of Birmingham. During 1981, he was a lieutenant assigned to Station 27 and for that Station he was in charge of the rescue service. Station 27 was composed of two engine companies and one rescue unit, all under the command of a captain. The firemen, as well as members of the rescue unit, worked a 24-hour shift. Morton as the lieutenant in charge of the *478 rescue unit worked one shift every 3 days. During that shift none of the employees, including Morton, was allowed to leave the station except on official business. Meals had to be eaten on the station premises. The assigned territory of the rescue unit was slightly larger than that of the engine companies, so that the rescue unit and the engine companies did not always respond to the same emergency. Otherwise the rescue unit personnel operated under the same rules, regulations, and controls as the firemen. As is customary in fire stations generally, Station 27 operated a common mess with two separate funds, a house-dues fund and a shift-dues fund. The house-dues fund was used for the purchase of staple food items and certain nonfood items such as magazines and televisions. All members of the station contributed an equal amount every pay day to this fund which was administered by one of the members of the station designated as the house man. The shift-dues fund was used for the purchase of food for daily consumption. It was administered by a shift man who planned the meals, purchased and cooked the feed, using the cooking facilities of the station, and collected the dues from *479 station members. Each member paid shift-dues for each shift worked. In accordance with the practice in effect at Station 27, and apparently throughout the Birmingham Fire and Rescue Service, every station member was expected to contribute to both funds, except that a member with a dietary problem who desired to bring his own food would be excused from contributing to the shift-dues fund. Under Section 38 of the Rules and Regulations of the Birmingham Fire and Rescue Service "[t]he Captains shall have the authority to make the necessary house rules to efficiently operate their respective stations." Under this authority the captain of Station 27 established the watches, the daily programs of instruction and work, the meal hours, etc. Participation in the common mess and the contribution to the two funds was important to the morale of every Birmingham fire station. It was and had long been an ingrained custom throughout the Fire and Rescue Service. Participation in the funds was also deemed to be required under the house rules pertaining to Station 27. Captains in the Birmingham Fire and Rescue Service had some minor disciplinary authority for violation of the house rules but *480 the authority to hire and fire members of the Fire and Rescue Service was vested in the Chief of the Department. Any refusal to participate in either fund, except for dietary purposes as permitted, would have resulted in severe peer pressure on the individual and as much pressure from supervisory personnel as could be exerted. Failure to participate in either of the funds without permission from the station captain would have resulted in counseling by the captain. The extent to which a station captain could or would have imposed his limited disciplinary sanctions upon a fireman refusing to contribute to these funds is not clear. However no rule, regulation, or ordinance adopted by the City of Birmingham or rule or regulation adopted by the Chief of the Fire and Rescue Service required contribution to these two funds. Participation in the two funds was not, during the year 1981, a condition of employment. It is undisputed that a member of the Fire and Rescue Service would not be fired for refusal to contribute to the two funds. Disciplinary action by the Chief of the Department would not have been imposed and at least theoretically such refusal would not have adversely affected *481 promotion. On the other hand, as a matter of practicality, petitioner had no choice but to participate in the funds. Petitioners urge us to expand the rule of , affg. and , to include cases such as the instant one where the participation in these funds is mandated by the practicalities of the situation but not required as a condition of employment. We have, however, consistently held in circumstances similar to the case at bar that payments into the common mess constitute a nondeductible personal expenditure under section 262. ; , affd. . We decline petitioners' invitation to overrule these prior precedents which are indistinguishable from the present case. Decision will be entered for the respondent.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect during the years in issue.↩